UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTEN FITZGERALD,

      Plaintiff,

v.

GENERAL MOTORS, LLC, and
GENERAL MOTORS LIFE
AND DISABILITY BENEFITS
PROGRAM FOR SALARIED
EMPLOYEES,

      Defendants.
_____/

Case No. 2:19-cv-10450

HONORABLE STEPHEN J. MURPHY, III

## OMNIBUS OPINION AND ORDER

Plaintiff sued Defendants under § 502(a)(1)(B) of the Employment Retirement Insurance Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to overturn a denial of disability benefits. ECF 1, PgID 19–21. Plaintiff also claimed that Defendants violated her right to a full and fair review under ERISA § 503, 29 U.S.C. § 1133, and that she is entitled to an order compelling production of relevant documents, per diem penalties against Defendants, interest, costs, and attorney's fees. *Id.* at 21–27. The parties cross-moved for judgment on the administrative record, ECF 42; 43, and Plaintiff moved for summary judgment on the document production claim, ECF 44. The Court reviewed the briefs carefully and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f). For the following reasons, the Court will remand the case to the Plan Administrator for further review and deny the pending motions.

1

## BACKGROUND

Defendants provided Plaintiff with disability benefits. ECF 38-1. Plaintiff worked for General Motors as a "Senior Performance Engineer." ECF 1, PgID 5. Then, in April 2017, Plaintiff stopped working and alleged that she was disabled due to depression, anxiety, and ADHD. *See* ECF 39, PgID 919, 921.[1] She further alleged that Defendants then began paying "Sickness and Accident" ("S&A") benefits to her. ECF 1, PgID 10.

In March 2018, Defendants informed Plaintiff that if she "continue[d] to be totally disabled and receive[d] [S&A] or Salary Continuance benefits for the maximum period to which [she was] entitled, [she] may be eligible for monthly Extended Disability Benefits" ("EDB"). ECF 39, PgID 1777. Defendants also told Plaintiff that if she were to apply for EDB, then she would have to fill out a "Statement of Claim for [EDB] form." *Id.*

On April 3, 2018, Plaintiff filled out an EDB claim form. *Id.* at 1788–89. Defendants later denied Plaintiff's EDB claim because "there was insufficient medical evidence to substantiate total disability for [EDB] purposes." *Id.* at 1803. The denial stated that Plaintiff's claim "was reviewed by [an] internal [m]edical [s]pecialist." *Id.* Plaintiff later requested a copy of her claim file. *Id.* at 1799. Defendants then provided "the medical information that [was] used in the review that lead [sic] to the denial of" Plaintiff's benefits. *Id.* at 1805.

---

[1] The claim file, docketed as ECF 39, is sealed.

In response, and through counsel, Plaintiff again requested her entire claim file. *Id.* at 1819–20, 1829–30. Plaintiff's counsel noted in the request that Defendants' previous "response did not contain the internal medical review that" multiple correspondences stated, "the Denial depended upon." *Id.* at 1819.

Next, Plaintiff appealed her EDB claim denial through Defendants' internal appeal system. *Id.* at 1885–1906. She argued that her own extensive medical records supported her disability claim. *Id.* at 1890–1900. She also argued that Defendants abused the ERISA claim process by not providing her with her full claim file, *id.* at 1901–03, that Defendants erred when they denied the claim because one of Defendants' claim reviewers noted that the claim was supported, *id.* at 1903–04, and that Defendants miscalculated her years of service, *id.* at 1904–05.

After further review, Defendants denied Plaintiff's appeal. *Id.* at 1994–96. Defendants' denial was based in part on a record review by "Dr. Carol Flippen, a General Motors Psychiatric Consultant." *Id.* at 1995. The denial letter specifically stated that "Dr. Flippen's review, which summarize[d] her decision and rationale" was "enclosed" with the denial letter. *Id.* at 1996. After Defendants denied the internal appeal, Plaintiff filed the present case. ECF 1.

## STANDARD OF REVIEW

The parties disagree as to the applicable standard of review. Plaintiff argues that under the Secretary of Labor's claims procedure regulation, 29 C.F.R. § 2560.503-1, de novo review applies. ECF 43, PgID 4441–42; ECF 47, PgID 4775–77. But Defendants argue that an arbitrary and capricious standard applies under the

3

ERISA Plan. ECF 42, PgID 4399–4400; ECF 45, PgID 4665–68. The Court must therefore determine the applicable standard of review.

Section 2560.503-1(h)(1) mandates that all "employee benefit plan[s] shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse" decision. If there is no full and fair review, "the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary." § 2560.503-1(l)(2)(i). Thus, the Court must review the administrator's decision de novo if there is no full and fair review.

Before deciding whether there was a full and fair review, the Court must first determine what version of § 2560.503-1 applies. At issue is paragraph (h)(4) of the regulation that explains the circumstances in which a claimant was not entitled to a full and fair review of his or her claims. *See* § 2560.503-1(h)(4). The current version of the regulation states that paragraph (h)(4)'s full and fair review does not apply to "claims for disability benefits filed under a plan from January 18, 2017 through April 1, 2018." § 2560.503-1(p)(4).

Here, Plaintiff argues that paragraph (h)(4)'s full and fair review applies because she filed her EDB claim on April 3, 2018. ECF 43, PgID 4441 (noting that the current version of the regulation became effective April 1, 2018); ECF 51, PgID 4968 (noting that Plaintiff's EDB claim is dated April 3, 2018). But Defendants argue that paragraph (p)(4) of the regulation applies instead because Plaintiff first claimed

4

a disability in April 2017 and first received S&A benefits in May 2017. ECD 45, PgID 4666; ECF 49, PgID 4907–08.

Based on the Court's review, no federal court has interpreted 29 C.F.R. § 2560.503-1(p)(4). The Court must therefore interpret the regulation based on its plain text. *See Roebuck v. USAble Life*, 992 F.3d 732, 740 (8th Cir. 2021) (Grasz, J.) (Adopting an "interpretation . . . [that] does not contradict the plain terms of the ERISA regulation."). Indeed, as Justice Gorsuch explained, interpreting a regulation is the same as "interpreting any other written law: We 'begin our interpretation of the regulation with its text' and, if the text is unclear, we 'turn to other canons of interpretation' and tie-breaking rules to resolve the ambiguity." *Kisor v. Wilkie*, ---U.S.---, 139 S. Ct. 2400, 2446 (2019) (Gorsuch, J., concurring) (quotation omitted).

Here, the regulation's plain text states that paragraph (h)(4)'s full and fair review does *not* apply "to *claims for disability benefits filed* under a plan from January 18, 2017 through April 1, 2018." § 2560.503-1(p)(4) (emphasis added). The regulation defines a "claim for benefits" as "a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefits claims." § 2560.503-1(e). Thus, the question is when did Plaintiff deliver her EDB claim to Defendants.

The record easily resolves the question. Defendants informed Plaintiff that if she were to apply for EDB, then she had to complete a "Statement of Claim for" EDB form. ECF 39, PgID 1777. Plaintiff did just that—she signed and dated her claim form on April 3, 2018. *Id.* at 1788. Because Plaintiff signed and dated her claim on

5

April 3, 2018 the claim was clearly delivered to Defendants *after* April 1, 2018 and thus § 2560.503-1(h)(4) applies because the EDB request occurred outside the dates considered in (p)(4). *See* § 2560.503-1(p)(4).

Because paragraph (h)(4) applies, the Court must determine whether Plaintiff received a "full and fair" review. A full and fair review under the regulation requires "that, before the plan can issue an adverse benefit determination on review on a disability benefit claim based on a new or additional rationale, the plan administrator shall provide the claimant, free of charge, with the rationale." § 2560.503-1(h)(4)(ii). "[T]he rationale must be provided as soon as possible and sufficiently in advance of the day on which the notice of adverse benefit determination on review is required to be provided." *Id*.

Here, Defendants' determination on review relied on a record review by Dr. Flippen. ECF 39, PgID 1995–96. But Defendants did not provide Plaintiff with Dr. Flippen's rationale until they sent the denial of benefits letter. *Id.* at 1996 ("Enclosed you will find Dr. Flippen's review, which summarizes her decision and rationale."). Defendants therefore violated § 2560.503-1(h)(4)(ii) and did not provide Plaintiff with a full and fair review. Because Plaintiff did not receive a full and fair review, the Court must review the EDB claim de novo.

Under a de novo review, the Court "determine[s] whether the [plan] administrator . . . made a correct decision." *Hoover v. Provident Life & Acc. Ins.*, 290 F.3d 801, 808–09 (6th Cir. 2002) (omission in original) (quotation omitted). In particular, the Court "must take a 'fresh look' at the administrative record but may

not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). Finally, under de novo review, the Court may remand the case to the plan administrator "where further fact-finding is necessary to determine claimant eligibility for benefits." *Javery v. Lucent Tech. Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 699 (6th Cir. 2014).

## DISCUSSION

The parties cross-moved for judgment on Plaintiff's claim for ERISA employment benefits and the claim that Defendants violated her procedural due process rights. ECF 42; 43. Plaintiff also moved for summary judgment on the claim for her request to compel documents and for fees. ECF 44. The Court will address each claim in turn.

I. <u>Long Term Disability Claim</u>

The Sixth Circuit has explained that "[t]o succeed in [her] claim for disability benefits under ERISA, Plaintiff must prove by a preponderance of the evidence that [s]he was 'disabled,' as that term is defined in the Plan." *Javery*, 741 F.3d at 700–01.

Under the Plan, "disabled" means "that the [e]mployee is wholly prevented from engaging in any employment or occupation for remuneration or profit as a result of bodily injury or disease, either occupational or non-occupational in cause." ECF 38-1, PgID 627.[2] Because the parties do not dispute the Plan's terms, the Court's review

---

[2] Although the Plan uses the term "totally disabled," ECF 38-1, PgID 627, the Court will use the term "disabled" in its Order.

7

is straightforward: the Court must examine the evidence in the administrative record and decide whether Plaintiff is "disabled" under the Plan. *Conway v. Reliance Standard Life Ins. Co.*, 34 F. Supp. 3d 727, 732 (E.D. Mich. 2014). The Court's review must "take into account all of the medical evidence, giving each doctor's opinion weight in accordance with the supporting objective medical evidence supporting the doctors' opinions." *Bragg v. ABN AMRO N. Am., Inc.*, 579 F. Supp. 2d 875, 896 (E.D. Mich. 2008) (citing *Crider v. Highmark Life Ins. Co.*, 458 F. Supp. 2d 487, 505 (E.D. Mich. 2006)).

With that in mind, the Court need not give "special weight" to a treating doctor's opinion. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). And if a treating physician's opinion is unsupported by clinical records, then the Court will discount the opinion's weight. *White v. Standard Ins. Co.*, 895 F. Supp. 2d 817, 848 (E.D. Mich. 2012) (citing *Maleszewski v. Liberty Life Assur. Co. of Boston*, No. 09–13926, 2010 WL 1416995, at *10 (E.D. Mich. Apr. 8, 2010)). The Court will now address whether Plaintiff proved by a preponderance of the evidence that she is entitled to EDB.

Plaintiff argued that she was "unable to work in her job or in her work location" and that Defendants offered only "a critique of [Plaintiff's] submission by two file reviewers, neither of whom ever personally examined [Plaintiff] or were medically qualified to conduct such a review." ECF 43, PgID 4443. Defendants, in contrast, suggest that the record evidence supported the EDB denial. ECF 42, PgID 4401–05.

To determine whether Plaintiff could not work as a result of bodily injury or disease the Court will analyze whether the record supported Defendants' decision. And to start, Plaintiff's doctor, Alexander Sackeyfio, diagnosed Plaintiff with major depressive disorder (severe and recurrent) and ADHD. ECF 39, PgID 921. He also noted that Plaintiff was "[h]aving trouble sleeping" had "dull headaches," that her hair was falling out, and that she had no appetite. *Id.* at 932. As a result, Dr. Sackeyfio found, in June 2017, that Plaintiff was "unable to engage in stress[ful] situations or engage in interpersonal relations." *Id.* at 937. Later, in September 2017, Dr. Sackeyfio appeared to find that Plaintiff was beginning to have seizures and noted that Plaintiff was "not ready to return to work [until] on a safe anticonvulsant." *Id.* at 972. Next, in October 2017, Dr. Sackeyfio found that Plaintiff "[c]annot do any work" and "will not be able to return to her regular job." *Id.* at 989. Dr. Sackeyfio also noted that Plaintiff struggled "to take in what [she] read[s]," "can't put words together," and has poor concentration. *Id.* at 999, 1012, 1014.

Dr. Sackeyfio claimed that Plaintiff's condition was worsening, and in January 2018, he noted that she fell off a ladder. *Id.* at 1807. In the same report, Dr. Sackeyfio noted that Plaintiff tried kick boxing, but that after the kick boxing session Plaintiff was "out of it [until] the next day." *Id.* And, in February 2018, Dr. Sackeyfio again concluded that he did "not [foresee] [Plaintiff] returning to work ever." *Id.* at 1757. In sum, Dr. Sackeyfio found that Plaintiff "is totally disabled from performing the material duties of any gainful occupation, sedentary or non-sedentary, on a full or part-time basis." *Id.* at 2497.

9

Plaintiff's clinical therapist, Dr. Mitchell Klein, also found that she had "(1) epilepsy, including seizures of multiple types recurrent through the present; (2) cognitive disability; (3) polymyalgia rheumatica; (4) undifferentiated connective tissue disease; (5) major depressive disorder; and (6) anxiety." *Id.* at 2445. Dr. Klein also noted that Plaintiff struggled to participate in conversations, analyze information, and make decisions. *Id.* at 2446. Finally, he noted that he believed Plaintiff could not "perform[] the material duties of any gainful occupation, sedentary or non-sedentary, on a full or part-time basis." *Id.* at 2447.

Plaintiff also supplied Defendants with her medical records from neurologist Dr. Neil Gilbert. Dr. Gilbert diagnosed Plaintiff with temporal lobe epilepsy, brain lesions, and high blood pressure. *Id.* at 3629. After prescribing Plaintiff with multiple anticonvulsants, he settled on Keppra. *Id.* at 1685, 2516, 3663. But, even with that medication, Dr. Gilbert reported in February 2018 that Plaintiff still had "difficulty understanding a conversation[,]" and "difficulty in processing information and decision making as well as learning new things." *Id.* at 3611. He noted that he agreed with Plaintiff's desire to "work as a part-time [worker] as [sic] available" and that she would have "significant difficulty in handling a full time job at this time." *Id.* at 3617. Thus, Dr. Gilbert's opinion that Plaintiff could at least work part time differs from the opinions of Plaintiff's other two medical providers.

Next, Plaintiff underwent an independent medical examination with Dr. Bradley Sewick. *Id.* at 3590–3601. After examining Plaintiff and reviewing her medical file, Dr. Sewick found that Plaintiff "would like to be able to return to work[,]"

10

but given the overall impression, she is not capable of competitive employment at this time on a general basis." *Id.* at 3600. He also noted that, based on his review of the records, Plaintiff had been incapable of competitive employment "for well over a year." *Id.*

Finally, Plaintiff supplied Defendants with records and an affidavit from her treating rheumatologist, Dr. Martin Pevzner. Dr. Pevzner swore that he diagnosed Plaintiff with "Connective Tissue Disease" in 2011. *Id.* at 2624. He further explained that the disease causes "muscle weakness, joint pain, and problems with internal organs." *Id.* The disease also contributed to Plaintiff's "impairment of concentration, retention, and information processing." *Id.* at 2625. Dr. Pevzner also diagnosed Plaintiff with "polymyalgia rheumatica" which caused Plaintiff "severe pain in multiple joints, including her shoulders and pelvic girdle," "gelling phenomena, sensory loss in the upper extremity, and radiculopathy." *Id.* Dr. Pevzner further noted that due to brain lesions, he prescribed Plaintiff with Prednisone. *Id.* "[S]ide effects of Prednisone include confusion, emotional imbalance, and changes in vision." *Id.* at 2625. And Dr. Pevzner noted that Plaintiff had "been suffering from symptoms similar to [the side effects of Prednisone] for a number of years, and the use of Prednisone, while not the chief cause of the [] symptoms, may be exacerbating them." *Id.* at 2626. Thus, Dr. Pevzner found that due to her medical issues and "extensive prescription regimen" Plaintiff would be unable to "perform[] the material duties of any gainful occupation, sedentary or non-sedentary, on a full or part-time basis." *Id.* at 2627.

11

In sum, Plaintiff argues that Defendants erred in denying her EDB claim based on the five medical providers' records and opinions discussed. Defendants, however, argue that the evidence supports their denial. ECF 42, PgID 4401–05. But Defendants acknowledge that remanding the case to the Plan Administrator is appropriate if the Court finds a deficiency in the administrative process. ECF 45, PgID 4676.

Defendants rely primarily on Dr. Sackeyfio's analysis of Plaintiff's initial EDB claim denial. In it, Dr. Sackeyfio stated that he hoped after a few months of therapy Plaintiff could return to work. *Id.* at 919. In an August 2017 letter to Dr. Sackeyfio, Dr. Gilbert (Plaintiff's neurologist) noted that Plaintiff's confusion had improved. *Id.* at 965. And, in January 2018, Dr. Sackeyfio found Plaintiff was "mentally capable of transacting personal affairs (for instance the endorsing of checks) with the realization of the nature and consequences of such acts." *Id.* at 1039. He also reported that Plaintiff had mildly-impaired judgment, but that she had no short- or long-term memory deficiencies, and that she had no paranoia or psychosis. *Id.* at 1038. Around that same time, the Social Security Administration denied Plaintiff's claim for disability benefits because she was "not disabled under" the Administration's rules. *Id.* at 1045.[3]

---

[3] Defendants cited an independent psychological review by a "Dr. Jones," and a records review from Dr. Flippen. ECF 42, PgID 4392–98. But Plaintiff argues that Dr. Jones never submitted the required written report and that she never had an opportunity to review Dr. Flippen's report. ECF 43, PgID 4428, 4442. The Court can, however, resolve the instant motions without relying on either Dr. Jones's or Dr. Flippen's disputed reviews because, as discussed throughout the opinion, evidence from Plaintiff's treating physicians and medical experts shows that there is a dispute

12

Defendants also highlight Dr. Sackeyfio's March 2018 assessment that Plaintiff could not "return to her job." *Id.* at 1786. Defendants argue, and the Court agrees, that Dr. Sackeyfio's assessment did not mean that Plaintiff could *never* return to work; it simply meant she would be unable to return to her former job. *Id.*; *see* ECF 45, PgID 4661. Defendants argue that Dr. Gilbert's August 2018 report supports the assessment. ECF 45, PgID 4662. Dr. Gilbert's report noted that Plaintiff would like to return to work part time, and that he supported Plaintiff's desire to return to work. ECF 39, PgID 2242. ("[Plaintiff] would like and I agree to work as [] part-time is available . . . ."). Thus, Defendants argue that Plaintiff has not shown that she is "precluded from any work." ECF 42, PgID 4404. And, to be entitled to disability benefits under the Plan, Plaintiff must "provide medical evidence satisfactory to the Carrier establishing that [she] is wholly prevented from engaging in any employment or occupation for remuneration or profit as a result of bodily injury or disease." ECF 38-1, PgID 627.

Defendants' argument is persuasive, but the record is unclear as to whether Plaintiff cannot work in any capacity (including part-time work) or cannot work at her former job (while other jobs may be possible). As a result, the Court will exercise its discretion and remand the matter to the Plan Administrator for further fact-finding about whether Plaintiff is disabled under the Plan, or whether she can work

---

regarding whether she is able to work part time or if she is fully disabled. Additionally, if any new medical reviews are required on remand, the Court advises that the Plan Administrator ensure they are conveyed to Plaintiff as required under ERISA and the Plan.

13

part time. *Javery*, 741 F.3d at 699 (holding that a district court has the authority to remand a case to the Plan Administrator for further fact-finding). Remanding the case to determine whether Plaintiff can work part time "will allow for a proper determination of whether" Plaintiff "is entitled to long-term disability." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622–23 (6th Cir. 2006) (noting that remand is appropriate because the Court is "not [a] medical specialist[] and that judgment" as to whether Plaintiff is disabled is not for the Court to make).

Finally, the Court need not address the employment start date issue. *See* ECF 42, PgID 4405–09; ECF 43, PgID 4445–47. For one, deciding the issue is unnecessary if the Plan Administrator determines on remand that Plaintiff was not totally disabled. Although Plaintiff argues that her employment start date is relevant to determine the amount of her EDB, ECF 43, PgID 4446, the issue will be moot if the Plan Administrator finds she is not disabled. And the Court will not rule on a potentially moot issue because the Court cannot issue an advisory opinion. *See Fialka-Feldman v. Oakland Univ. Bd. of Tr.*, 639 F.3d 711, 715 (6th Cir. 2011) ("The 'case or controversy' requirement prohibits all advisory opinions, not just some advisory opinions and not just advisory opinions that hold little interest to the parties or the public."). Thus, the Court will not adjudicate the employment start date issue at this time. If Plaintiff is dissatisfied with the Plan Administrator's determination on remand, she may again appeal.

14

II.    <u>Procedural Due Process Claim</u>

Plaintiff alleged that she is entitled to "an award of full retroactive benefits" because of Defendants' "procedural violations affecting the outcome of an otherwise valid disability claim." ECF 1, PgID 22–23. Because the Court has not determined whether Plaintiff had a valid disability claim, the Court must deny judgment without prejudice to either party on the procedural due process claim.

III.    <u>Per Diem Penalty Claim</u>

Last, Plaintiff moved for summary judgment on her per diem penalty claim. ECF 44. Plaintiff alleged that she is entitled to per diem penalties from Defendants under 29 U.S.C. § 1132(c) because Defendants "failed to produce key plan documents" that "were of material importance." ECF 44, PgID 4452–55, 4462. Plaintiff specifically claims that Defendants did not produce a "GM Retirement Plan Document." *Id.* at 4454. Defendants respond that Plaintiff never requested the Plan in writing, the Plan "is not an instrument under which the [GM] Disability Plan is established or operated," and Defendants did not rely on the Plan when denying Plaintiff's claim. ECF 46, PgID 4716.

But the Court need not resolve the dispute now: Plaintiff's motion states that the "Retirement Plan document is of considerable importance as its method of calculating benefits is incorporated into" the Plan at issue. ECF 44, PgID 4464. As stated earlier, though, the Court need not calculate the benefits amount of Plaintiff's EDB claim because it is remanding the case to the Plan Administrator to find additional facts related to whether Plaintiff is disabled. Thus, a determination of

15

whether the Retirement Plan is a "relevant document" under § 1132(c) would be premature. The Court will exercise its discretion and decline to award Plaintiff the per diem penalty at this time. § 1132(c) (noting that a plan administrator "may in the [C]ourt's discretion, be personally liable" for a per diem penalty if it refuses to provide necessary information to Plaintiff). And the summary judgment motion will be denied without prejudice.

## CONCLUSION

The Court will deny the cross-motions for judgment on the administrative record. Instead, the Court will remand the case so the Plan Administrator can find additional facts about whether Plaintiff is disabled under the Plan. Because the Court is remanding the case, it will deny summary judgment on Plaintiff's document production claim without prejudice. If Plaintiff is dissatisfied with the Plan Administrator's decision on remand, she may again appeal to the Court. The Court will, however, hold the Judgment for ten days, and require the parties to submit a joint status report within eight days of the Order stating whether they would like to attend a settlement discussion with a skilled federal mediator before Judgment is entered. Mediation prior to remand would be a beneficial, efficient and cost-effective way to resolve the case.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for judgment on the record [42] is **DENIED**.

16

**IT IS FURTHER ORDERED** that Plaintiff's motion for judgment on the record [43] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment [44] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the Plan Administrator for the reasons stated above.

**IT IS FURTHER ORDERED** that the Court will **HOLD** judgment for **TEN** days and require the parties to **FILE** the above-described joint status report within **EIGHT** days of this Order.

This is a final order.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 21, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 21, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager